```
                       UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF MISSOURI
                              EASTERN DIVISION


TIMOTHY LANE,                    )
                                 )
            Petitioner,          )
                                 )
       v.                        )       No. 4:08 CV 1644 DDN
                                 )
DON ROPER,                       )
                                 )
            Respondent.          )
```

**MEMORANDUM**

This action is before the court upon the petition of Missouri state prisoner Timothy Lane for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.  BACKGROUND**

On January 20, 2005, petitioner Lane was convicted by a jury in the Circuit Court of the City of St. Louis, Missouri, of two counts of statutory rape in the first degree (Counts I and III); attempt to commit statutory rape in the first degree (Count II); and statutory sodomy in the first degree (Count IV). (Doc. 13, Ex. C at 111-14.) On March 11, 2005, petitioner was sentenced to 15 years imprisonment on each count. (Id. at 123-24.) The sentences were ordered to run concurrently with each other. (Id.) The Missouri Court of Appeals affirmed the judgment. State v. Lane, 190 S.W.3d 560 (Mo. Ct. App. 2006) (summary order) (per curiam); (Doc. 13, Ex. E) (supplemental opinion).

Petitioner filed a motion for post-conviction relief and for an evidentiary hearing based on claims of ineffective assistance of trial and appellate counsel. (Doc. 13, Ex. I at 1.) The motion court denied the request for an evidentiary hearing and entered its judgment denying the motion for relief. (Id.) The Missouri Court of Appeals affirmed the

judgment. <u>Lane v. State</u>, 253 S.W.3d 584 (Mo. Ct. App. 2008) (summary order) (per curiam); (Doc. 13, Ex. I) (supplemental opinion).

In its supplemental opinion on direct appeal from the conviction, the Missouri Court of Appeals described thus the facts indicated by the evidence that supported the verdict:

> . . . Paula Goodwin (Goodwin) and her two daughters moved into [petitioner]'s apartment in November 2002. K.D. is Goodwin's thirteen-year-old daughter. Several months after the incidents that led to the charges in this case, the Department of Family Services removed K.D. and her sister from Goodwin's custody because of an argument between Goodwin and K.D's sister. K.D. and her sister were eventually placed in foster care. On March 25, 2003, while in foster care, K.D. spoke to Luzette Wood, a representative at the Child Advocacy Center. Detective Mickey Owens (Owens) witnessed the interview.
>
> According to the Child Advocacy Center summary report, after school in mid-November 2002, when K.D. was at home alone with [petitioner], [petitioner] raped K.D. from behind while she was lying on her stomach. At the Child Advocacy Center, K.D. demonstrated the rape with stuffed animals and said that [petitioner] placed "his 'privacy' (later defined to be his 'penis') in her 'privacy' and [was] moving up and down." In court, K.D. testified that she was lying face down on the bed when [petitioner] removed her pants, laid on top of her, and tried to place his penis into her vagina. When asked whether his penis stayed outside her body or went in, K.D. replied that she felt him "pushing in me." K.D. said that [petitioner] stopped when the phone rang, and she saw him wipe off his penis with a rag. He told her that he would hurt her and her mother if she told anyone. During cross examination, when asked if [petitioner] inserted his penis into her vagina, K.D. said "no."
>
> On direct examination, Owens summarized K.D.'s statements about the incident, which she made at the Child Advocacy Center, by saying that she had been raped by [petitioner] putting his penis into her buttocks. Later on re-direct, Owens admitted that K.D. had never used the word "buttocks." She had merely stated "that he came from behind her" and "his penis went in her private from behind."
>
> Also, according to the Child Advocacy Center summary report, two more incidents between [petitioner] and K.D. took place on December 26, 2002 while K.D.'s mother was in the hospital. K.D. was alone in her bedroom playing a video game when [petitioner] entered the room, turned off the television and the lights, pulled down her pants, and tried, unsuccessfully, to place his penis inside her vagina. K.D.

fought him and yelled for her sister, and then [petitioner] held her up and dropped her on the floor. Later that night, K.D. awoke to feel [petitioner] kissing her. He pulled her pants down and began licking her vagina. She tried to push him off her, and as they were struggling, he inserted his penis into her vagina. She continued to fight him, he stopped, and as he left he said, "you didn't let me nut." When her mother came home from the hospital, K.D. told her what happened.

>   Dr. Tim Kutz (Kutz) performed a physical examination of K.D. after her interview at the Child Advocacy Center. The examination revealed a healed tear to her hymen. Kutz questioned K.D. about whether any men other than [petitioner] had had intercourse with her, and K.D. said no. Because the physical examination occurred months after the alleged rapes, no rape kit was performed. Kutz testified that the injury to K.D.'s hymen occurred within the preceding two years by something pressed into her vagina.

(Doc. 13, Ex. E Memorandum at 2-3.)

## II.  PETITIONER'S GROUNDS FOR HABEAS RELIEF

Petitioner claims three grounds for relief in this habeas action:

(1)  Petitioner received ineffective assistance of trial counsel when counsel failed to call certain employees of the Division of Family Services (DFS) and for failing to introduce DFS records that included statements made by the victim to DFS employees.

(2)  Petitioner received ineffective assistance of trial counsel when counsel failed to impeach the victim when she testified petitioner had licked her vagina.

(3)  Petitioner was denied due process and equal protection, because there was insufficient evidence to convict petitioner of the crimes charged.

Respondent argues that all grounds are without merit. (Doc. 12.) Respondent does not contend that petitioner's claims are procedurally defaulted. Grounds 1 and 2 were ruled on by the Missouri Court of Appeals on appeal from the denial of post-conviction relief. (Doc. 13, Ex. I at 6-7.) Ground 3 was denied by the Missouri Court of Appeals on direct appeal from the conviction and sentence. (Doc. 13, Ex. E at 2.)

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or ... decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000)(plurality opinion). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. An incorrect ruling is not necessarily unreasonable, and the writ will not be granted unless a state court decision is both wrong and unreasonable. McGehee v. Norris, 588 F.3d 1185, 1193 (8th Cir. 2009).

A state court's factual findings are presumptively correct and are subject to disturbance only if proven incorrect by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Bell v. Norris, 586 F.3d 624, 630 (8th Cir. 2009), cert. denied, 130 S.Ct. 1295 (Jan. 25, 2010).

### IV. DISCUSSION

#### Grounds 1-2

**Constitutionally ineffective assistance of counsel**

Grounds 1 and 2 allege ineffective assistance of counsel. The right to constitutionally effective assistance of counsel is rooted in the Sixth and Fourteenth Amendments. Strickland v. Washington, 466 U.S. 668, 684-85 (1984). A person accused of a crime is entitled to be assisted

in preparing and presenting his defense by an attorney who ensures the constitutional guarantee of a fair trial. Id. at 684-89.

In order to prevail on a habeas claim of ineffective assistance of counsel, the petitioner must demonstrate two elements: first, a lack of reasonable performance of counsel, and second, prejudice resulting from the unreasonable representation. Id. at 687. Under the performance component, petitioner must show that his counsel's performance was unreasonable and not sound trial strategy.[1] Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). The court evaluates counsel's conduct as of the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. See Rompilla v. Beard, 545 U.S. 374, 381 (2005).

Under the prejudice component, petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694; see also Padilla v. Kentucky, 130 S.Ct. 1473, 1482 (March 31, 2010).

## Ground 1

Petitioner alleges his counsel was rendered constitutionally ineffective assistance by failing to call several DFS workers as witnesses and failing to introduce DFS records that included statements made by the victim to DFS employees. Petitioner contends that this

---

[1] The Supreme Court examined a standard of reasonable performance, holding that

> [t]he proper measure of attorney performance remains simply the reasonableness under prevailing professional norms. We have long recognized that prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides in determining what is reasonable . . . . Although they are only guides, and not inexorable commands, these standards may be valuable measures of the prevailing professional norms of effective representation, especially as these standards have been adapted to deal with the intersection of modern criminal prosecutions and immigration law.

Padilla v. Kentucky, 130 S.Ct. 1473, 1482 (March 31, 2010) (internal citations omitted).

evidence would have shown an alternative cause for the victim's hymenal tear and would have also impeached the victim's testimony.

As a general matter, trial counsel's decision not to call a witness to testify is presumptively a matter of trial strategy and is not a basis of ineffective assistance of counsel. Battle v. Delo, 19 F.3d 1547, 1555 n.4 (8th Cir. 1994). "[C]alling or not calling of witnesses is a matter normally within the realm of the judgment of counsel, and this judgment will not be second-guessed by hindsight." Frank v. Brookhart, 877 F.2d 671, 674 (8th Cir. 1989). However, strategy resulting from the lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel. Battle, 19 F.3d at 1555 n.4 (citing Chambers v. Armontrout, 907 F.2d 825, 828-31 (8th Cir. 1990) (en banc)).

Petitioner contended in his brief to the Missouri Court of Appeals that at trial the state argued that the tear in the victim's hymen must have been caused by petitioner since the victim denied any other sexual contact. (Doc. 13, Ex. F at 22-23.) However, the evidence would not have served a valid defense. The evidence petitioner sought to introduce would have shown that the victim was abused by her biological father in 1999 and by her mother's ex-boyfriend in 1997, four to six years prior to the victim's examination with Dr. Kutz. (Id., Ex. I at 5.) However, Dr. Kutz testified that, in his expert opinion, the tear to the victim's hymenal tissue could have occurred as long ago as two years prior to the examination on April 22, 2003. He was not asked about any greater period of time. (Id., Ex. D at 203-09.) The evidence did not support an alternate explanation for the victim's hymenal tear, and would not have established a viable defense.

Moreover, petitioner fails to rebut the heavy presumption that trial counsel employed reasonable trial strategy in not introducing DFS employees or records as evidence. These strategic choices "made after thorough investigation of law and facts . . . are virtually unchallengeable." Strickland, 466 U.S. at 690. It was a valid strategic choice to not introduce DFS employees and records, as the evidence would not have shown an alternative source of the victim's hymenal tears.

Setting aside the use of the argument to prove an alternative source of the injuries, the evidence also could not have been used to impeach

the victim's testimony. According to the trial record, when the victim was asked by the prosecutor what she told petitioner when he asked her whether she had ever performed what they were viewing in a pornographic film, defined by the victim as "people having sex," she responded "No." (Doc. 13, Ex. D at 171-72.) She was not asked and did not state whether she had actually had sexual intercourse before petitioner raped her. Therefore, any DFS evidence showing previous sexual abuse would not have impeached her testimony. Moreover, even if she had testified that she had not actually engaged in intercourse, that testimony would not have been inconsistent with the DFS records. The records only indicate that the victim had been subjected to abuse and did not specify sexual intercourse. (Id., Ex. H at 47, 60-62.)

The Missouri Court of Appeals affirmed the denial of relief on this ground, because petitioner failed to show that the presence of this evidence would have provided a viable defense and the previous statements could have been used to impeach. (Doc 13, Ex. I at 5.) For the reasons stated above, the state court adjudication of petitioner's claim was not contrary to Strickland; nor was the decision based upon an unreasonable determination of facts or law as required by § 2254.

Accordingly, Ground 1 is without merit.

**Ground 2**

Petitioner alleges his counsel was constitutionally ineffective in failing to impeach the victim's testimony as to whether there had been genital-to-oral contact between her and petitioner. Petitioner contends that the victim testified that she had previously told Dr. Kutz there had been no such contact, contrary to testimony at trial.

There was no testimonial inconsistency to impeach. At trial, the victim testified that petitioner had "licked her vagina." (Id., Ex. D at 179.) Before trial, the victim's statements were not inconsistent with that testimony. (Id., Ex. C at 46.) The victim stated that petitioner had placed his tongue on her "privacy." (Id.) In addition, medical examination records indicated that the victim reported to Dr. Kutz that the victim had experienced mouth or tongue to vagina contact, but had not had contact between her mouth and petitioner's penis. (Id.

at 50.) This is also consistent with testimony provided by Dr. Kutz. (Id., Ex. D at 203.) Dr. Kutz testified that the victim reported contact between petitioner's mouth and her vagina. (Id.) Because there was no inconsistency to impeach, this ground fails for lack of factual support.

The Missouri Court of Appeals affirmed the denial of relief on this ground because there was no inconsistency to impeach. For the reasons stated above, the state court's adjudication of the petitioner's claim was not contrary to Strickland, nor was the decision based upon an unreasonable determination of fact or law as required by § 2254. Accordingly, Ground 2 is without merit.

**Ground 3**

Petitioner alleges that the evidence related to Count 1 is inconsistent as to whether he inserted his penis into the victim's buttocks or vagina. He further argues this inconsistency renders the evidence insufficient to convict on any count. Notably, this insufficiency claim is narrower than the one made on direct appeal. On direct appeal, petitioner argued (and the court rejected) several additional insufficiencies, including the age of the victim and whether actual penetration occurred. (Doc. 13, Ex. A at 23.)

When a federal court is reviewing the merits of a state court conviction in the context of a claim of insufficient evidence, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Moreover, we must assume the trier of fact resolved all conflicting inferences in favor of the state, and defer to that resolution. Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994).

There is no inconsistency as to whether petitioner placed his penis in the victim's buttocks or vagina at the time of the first incident. At trial, the victim's direct testimony was as follows:

> Q: After he pulled your pants down, what's the next thing you remember him doin'?

```
          A:    He tried to get inside me.

          Q:    Okay.  Now, when you say he tried to get inside of you,
                can you tell us where inside of you you mean?  What's
                that part called?
          A:    My vagina.

          Q:    Okay.  All right.  And what did he try to get inside of
                your vagina?
          A:    His penis.

          Q:    Okay.  And this is while you're on your stomach?
          A:    Yes.

          Q:    And if you're on your stomach, where was he?
          A:    On top of me.

          Q:    Okay.  Was he stayin' still or movin'?
          A:    He was tryin' to get it in.

          Q:    Okay.  Did his -- what do you call his part that he was
                tryin' to put inside you?
          A:    His penis.

          Q:    Okay.  DO you know if his penis stayed on the outside of
                your body or went on the inside?
          A:    All I felt was him pushing in me.

          Q:    Okay.  Then what happened after he did that?
          A:    He got up because my mama called.
```

(Doc. 13, Ex. D at 174.)  This is consistent with Dr. Kutz's medical examination, in which the victim reported vaginal, and not anal, contact. (Id., Ex. C at 50.)  It is also consistent with Dr. Kutz's physical examination showing a healed tear in the victim's hymen. (Id., Ex. D at 206-08.)  It is not inconsistent with the victim's interview with Wood. (Id., Ex. C at 45.)  In that interview, K.D. stated that petitioner raped her "from behind" and placed his "privacy" in her "privacy."  (Id.)

Petitioner argues that Det. Mickey Owens' testimony, in which Owens stated that the first rape occurred when petitioner placed his penis into the victim's buttocks, is inconsistent with the above testimony.  (Id., Ex. D at 233.)  However, on redirect examination, Owens clarified that "buttocks" was his own word, and that the victim had specifically stated petitioner came from behind her and put his penis "in her private."  (Id.

at 250.) Therefore, there is no inconsistency as to how the first rape occurred.

Petitioner also argues that, because the testimony provided on the stand was inconsistent, it must be corroborated in order to be sufficient for conviction. Corroboration of testimony in a rape case is mandated only if the victim's testimony is "so contradictory and in conflict with the physical facts, surrounding circumstances and common experience, that its validity is rendered doubtful." State v. Harris, 620 S.W.2d 349, 353 (Mo. 1981). The collaboration doctrine only applies to inconsistencies within a victim's testimony. State v. Paxton, 140 S.W.3d 226, 230 (Mo. Ct. App. 2004). Contradictions and inconsistencies between different parts of testimony are left to the jury to reconcile. Id.

The lack of corroboration is not relevant here. The victim's testimony was not in conflict with the physical facts. It was actually bolstered by them, since Dr. Kutz's medical examination showed hymenal damage. (Doc. 13, Ex. D at 206-08.) Because the testimony was not inconsistent, there is no need for corroboration. Moreover, even if there were inconsistencies, they would be between testimony provided by different people or between testimony and prior statements. Therefore, the court properly left this issue to the jury to decide.

The Missouri Court of Appeals held there was sufficient evidence for a reasonable trier of fact to find petitioner guilty and the collaboration doctrine did not apply in this case. (Id., Ex. E at 5, 7-8.) The undersigned agrees. The state court was not unreasonable in its determinations of law or fact. Accordingly, Ground 3 is without merit.

## V. CONCLUSION

For the reasons stated above, the petition of Timothy Lane for a writ of habeas corpus is denied. An appropriate Judgment Order is issued herewith.

                                            /S/   David D. Noce
                                      **UNITED STATES MAGISTRATE JUDGE**

Signed on May 10, 2011.